[No. 15816. Department Two. June 29, 1920.]

W. M. INGLIS, *Appellant*, v. A. G. MORTON, *Respondent*.[1]

MALICIOUS PROSECUTION (3, 15)—PROBABLE CAUSE—EVIDENCE—SUFFICIENCY. Probable cause for instituting insanity proceedings must be found, as a matter of law, and is a complete defense to an action for malicious prosecution, where it is undisputed that defendant made a complete statement of all the facts, and made the complaint on the advice of a deputy prosecuting attorney; and objection to the evidence as general is unavailing where there was no effort to have it made specific.

SAME (13)—EVIDENCE—ADMISSIBILITY. In an action for malicious prosecution of an insanity charge, it is not error to exclude, on the issue of probable cause, the record in a civil case between the parties where it did not contradict defendant's evidence of probable cause or contain anything material to the issue.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 19, 1919, upon granting a nonsuit, dismissing an action for malicious prosecution. Affirmed.

*P. L. Pendleton*, for appellant.

*Bates & Peterson* and *Remann & Gordon*, for respondent.

TOLMAN, J. — Appellant, as plaintiff, brought this action against the respondent, as defendant, to recover damages for the alleged malicious prosecution of the appellant upon a charge of insanity. The complaint alleges that the respondent swore to a complaint upon

[1] Reported in 190 Pac. 908.

an insanity charge, that the appellant was arrested thereunder, incarcerated in the county jail, thereafter tried on the insanity charge, and a verdict of "not insane" rendered by the jury. It is further charged that the respondent caused the warrant charging insanity to be issued maliciously and without probable cause for the purpose of procuring the plaintiff's commitment to an insane asylum, all because of a feeling engendered by former quarrels and litigation between the parties. The answer of the respondent admits the signing of the complaint charging the appellant with insanity; admits that the jury returned a verdict of "not insane" upon the hearing, and denies each and all of the other allegations of the complaint. At the close of appellant's testimony the trial court sustained a challenge to the legal sufficiency of the evidence and granted respondent's motion to discharge the jury and enter a judgment of dismissal, from which judgment this appeal is taken.

Both parties concede that a proceeding of this kind is analogous to a case where a party is charged with a crime out of which an action for malicious prosecution arises, and that the same rule should apply where the prosecuting witness makes a full, fair and complete statement to the prosecuting attorney, or to any other reputable attorney, and is advised that the facts are sufficient upon which to base a complaint of insanity. Since the parties are so agreed, and perceiving at this time no reason why their position is not correct, we have made no independent investigation to determine whether in other jurisdictions it has been so held, but assume for the purposes of this case that they are right.

This simplifies the issues to be here determined, and the only substantial question to be decided is: Did the undisputed facts, at the close of appellant's case below,

show that the respondent acted upon the advice of the prosecuting attorney, after making a full, fair, and truthful statement of all of the facts relating to probable cause existing for the charge of insanity? At the close of appellant's case, the undisputed evidence as brought out by the examination of the respondent, who was called as a witness by appellant, upon the question of probable cause, was that, on Saturday afternoon, May 25, 1918, while he was absent from his office, the appellant went to his place of business armed with a prospector's pick, and smashed up a glass show case belonging to respondent attached to the wall at the street entrance to his office, together with the exhibits therein; that, after so destroying the show case and its contents, appellant made a speech to the crowd which had assembled; that she was apprehended by a policeman and taken to the police station; that this situation was detailed to respondent when he returned to his office, and he then went to the police station to investigate further and was directed by the police officers to the prosecuting attorney for Pierce county. It being Saturday afternoon, the prosecutor's office was closed, and he then telephoned and went to the home of Mr. Gordon, one of the deputies, where he consulted with Mr. Gordon for something like an hour; that, in such consultation, he went minutely into details concerning all of his dealings and transactions with the appellant, including the history of the prior litigation between them, told him her history and the history of her troubles with other dentists of the city of Tacoma, and as he says: "I told him everything about it. He was familiar with some of the things about it because he had been at my office and asked about it. I told him everything. I kept nothing back. I put the whole matter up to the prosecuting attorney and followed his advice, and that is the reason I signed

the complaint." And on redirect examination, he further testified: "I told him about the damage suit. I went through as much of it as I remembered. Mr. Gordon was already familiar with it. I told him as fully the statement for Mrs. Inglis as I did for myself. I do not think I omitted anything. . . . I told him about all the trouble I had in the dentist chair that lead up to our disagreement."

After this conference with the prosecuting attorney on Saturday afternoon, respondent, according to his testimony, again went to the prosecuting attorney's office on Monday morning, further consulted with Mr. Gordon and with another deputy in the same office, and thereupon, acting wholly upon their advice and at their suggestion, he signed and swore to the insanity complaint. Appellant seems to complain that this was insufficient because respondent, in his testimony, did not disclose the exact words which he spoke to the prosecutor in making his statement to him, though it nowhere appears that there was any limitation placed upon the appellant's right by redirect examination to test the accuracy of witness' testimony and the fullness and fairness of his statement to the prosecutor by going into details and inquiring specifically as to what was said upon any and all points. We cannot hold this contention to be well founded. Appellant deliberately called the respondent to the witness stand and went into the question of his reasons and motives for signing the complaint, on direct examination, thereby opening the door for the cross-examination which followed, and on redirect examination he had full opportunity to test the witness' statements, both general and specific, and might have inquired in detail as to the disclosures made upon any and all points and the language used in making such disclosures. The evidence upon this point, as it stood at the close of ap-

pellant's case, was wholly undisputed, and therefore it became the duty of the court to pass upon that evidence and to find therefrom probable cause, as a matter of law, and to direct a verdict accordingly. *Borg v. Bringhurst,* 105 Wash. 521, 178 Pac. 450, and cases there cited.

Error is also assigned upon the refusal to admit in evidence the statement of facts in the civil case between the parties theretofore tried. Appellant does not advance any reason for the admission of this evidence, and from an examination of the record we perceive none. Appellant did not, in the examination of the respondent, direct his attention to such statement of facts, or anything therein contained, and our attention is directed to nothing therein which could in any wise contradict the respondent's testimony as to making a full, fair and complete statement to the prosecuting attorney.

Finding no error, the judgment appealed from is affirmed.

HOLCOMB, C. J., MOUNT, FULLERTON, and BRIDGES, JJ., concur.